UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PASCAL'S MANALE RESTAURANT, INC. | CIVIL ACTION |
| VERSUS | NO. 06-7427 |
| UNITED NATIONAL INSURANCE COMPANY | SECTION "C" (1) |

### ORDER AND REASONS

Before the Court is the motion of defendant, United National Insurance Company ("UNIC") to exclude evidence, or alternatively, to apply an adverse presumption against the plaintiff. Rec. Doc. 38. The plaintiff, Pascal's Manale Restaurant, Inc. ("Pascal's") opposes the motion. Rec. Doc. 44. For the following reasons, the motion is DENIED.

### I. Background

The plaintiff filed the instant lawsuit in state court for damages due to business income loss caused by Hurricane Katrina and allegedly due under an insurance policy issued by defendant, UNIC. At issue in this motion is damage alleged to have been sustained as the result of wind and wind driven water to the restaurant's hood and ventilation system. The parties agree that a portion of the protective cap which covers the vent area on the roof was blown off by

Katrina's winds. The plaintiff alleges that this resulted in an opening in the system through which rain water was driven deep into the system by the full force of the storm's winds, which damaged the motors that powered the ventilation fans, as well as duck work and caused other damage to the interior hood system. Pascal's claims that the entire system needed to be replaced as a result, and that the restaurant was closed for nearly six months, until March 3, 2006, primarily because of the time it took to perform the repair, replace, and attain the required state inspection of the ventilation system. Thus the damage to the hood system is the primary basis for Pascal's business interruption claim.

Pascal's notified UNIC of its storm damage on September 27, 2005. UNIC retained an adjusting company to adjust the claim. The adjuster met with the insured on September 29, 2008 to perform an inspection and thereafter prepared a summary report for UNIC, which was submitted on November 10, 2005. Rec. Doc. 44-2, Ex. 1 at 1. The very brief report documented "damage to vents," but did not specify any damage to the interior duct work or damage to the interior hood system. *Id.* The adjuster did not provide UNIC with an estimate for the damage sustained as a result of wind, but stated that he had informed "insured that no advance would be paid at this time per [UNIC]. The wind policy was not the cause of the Business interruption." *Id.* at 2. According to the plaintiff, this report was not provided to Pascal's until late 2007, and did not know its contents during the events relevant to this motion. Rec. Doc. 44 at 2. After UNIC was informed that the original adjuster no longer worked for the adjusting company, another adjuster, Mitash Patel was assigned to the claim in order to produce an estimate of the wind damage. Patel met with the insured and performed a second inspection in late November

or early December. He noted that the cap or top of the hood system was missing, but testified in his deposition that he did not inspect or look into the vent because he did not see anything moved or pulled other than the vent. Rec. Doc. 38, Ex. A. He photographed the damaged vent exhaust, but incorrectly labeled it as an "A/C unit." Rec. Doc. 44, Ex. 3. Patel testified that this reference was a "labeling" error and that he knew it was actually a kitchen vent, but he acknowledged he did not recall including it in his adjusting analysis. *Id.*, Ex. 6. He repeats such a reference in his report of January 16, 2006, stating "[a]n A/C vent was also blown off the condensor unit." Rec. Doc. 44, Ex. 5. Apparently, Patel had become an adjuster only after the storm. However, Patel testified that the insured did not advise him that any duct work was damaged or that the hood system was damaged and had to be repaired or replaced.

  The insured contacted Anthony Gaspar in early November, 2005 to replace the hood system, and Gaspar submitted a bid for the job on November 18, 2005. Rec. Doc. 38, Ex. D. He testified in his deposition that he did not really inspect the hood, but simply looked at it in order to provide an estimate for its replacement. He testified that the hood was entirely removed and replaced with a new system between November 18, 2005 and February 24, 2006. The damaged hood and ducting was not photographed or saved prior to being thrown away. UNIC claims that it was never afforded an opportunity to inspect the hood and quantify the damage, and that plaintiff failed to keep any documented evidence, or have it inspected by anyone other than the plaintiff himself. The plaintiff states that it was not until a letter dated March 31, 2006, after the ventilation system was removed and replaced, that UNIC sent a letter to Pascal's attorney that it was not considering damage to the ventilation system in its adjustment. Plaintiff argues that if

UNIC had been more forthcoming with information, Pascal's would have known to retain the damaged ventilation system for purposes of its insurance claim.

### **Law and Analysis**

The defendant seeks the exclusion of any evidence reflecting that the duct work to the hood ventilation system or the interior hood components were damaged or had to be replaced, or any reference to the fact that the damage to the duct work and interior hood system allegedly caused plaintiff's business to cease operations and/or caused it to incur extra expenses. Alternatively, UNIC moves for an order that the jury should be instructed that UNIC is entitled to an adverse presumption regarding damage to the duct or hood system and its impact or triggering of the business interruption loss claimed.

While state substantive law governs in this diversity action, under *Erie R.R. Co. v. Tomkins*, 304 U.S. 64 (1938), procedural matters are governed by federal law, *Hanna v. Plumer*, 380 U.S. 460 (1965). The Fifth Circuit has concluded that evidentiary "presumptions" which merely permit an adverse inference based on unproduced evidence are controlled by federal law. *Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1047 (5th Cir. 1990). The Fifth Circuit specifically extended this conclusion to the issue of spoliation of evidence, at issue here. *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003). Under federal law, an adverse inference based on the destruction of potential evidence is predicated on bad conduct by the defendant. *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000). A party seeking such a presumption must show that the adverse party acted in bad faith in order to establish that it is entitled to an adverse inference. *Id.*

In the event that relevant evidence is intentionally destroyed, or "spoiled," a trial court may exercise its discretion to impose sanctions on the responsible party. *Menges v. Cliffs Drilling Co.*, 2000 WL 765082, *1 (E.D.La. Jun. 12, 2000) (Vance, J.). In determining the seriousness of sanctions that may be imposed, the court should consider: 1) the degree of fault of the party who altered or destroyed the evidence; 2) the degree of prejudice suffered by the opposing party; and 3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and if the fault is serious, will serve to defer such conduct by others in the future. *Id.* at *2. If appropriate, the court may either allow the jury to infer that the party spoiled the evidence because it was unfavorable to that party's case or exclude the spoiled evidence. *Id.* The following factors are relevant to the determination of whether bad conduct can be shown:

> Before a court may exclude spoiled evidence or provide for an adverse inference to arise from the intentional destruction of evidence, the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed. Such a duty arises when a party has notice that the evidence is relevant to litigation. Once a court concluded that a party was obliged to preserve the evidence, it must then consider whether the evidence was intentionally destroyed and the likely contents of that evidence.

*Id.* at *2 (internal quotations and citations omitted). The defendant argues that the fact that the plaintiff filed its insurance claim with UNIC prior to the destruction of the pre-storm hood system and that the adjustment of the claim was ongoing throughout the period when the system was removed and destroyed[1] is evidence that the hood system was "relevant to litigation." The

---

[1] It is not clear precisely when the hood system was discarded, the defendant places it between November 2005 and February 2006. UNIC also notes that Pascal's obtained a valid mechanical permit to install the hood on December 8, 2005. Rec. Doc. 38-2, at 5.

Court cannot conclude that litigation is or should be assumed to be the result of any insurance claim.  However, while the vent was discarded prior to the filing of the lawsuit in this case, it appears to have been discarded after the plaintiff had become frustrated with the handling of his insurance claim.  *See* Rec. Doc.44, Ex. 3.

Even assuming that the plaintiff had a duty to notify the defendant prior to disposing of the vent, such a breach does not itself amount to a showing of bad faith and spoilation of evidence.  While plaintiff appears to have intentionally disposed of the vent, this does not amount to the equivalent of "intentional destruction of evidence."  Here, the defendant had ample opportunity to inspect and adjust plaintiff's claim, including the hood system.  At least two adjusters inspected the damage to the restaurant at least twice.  Both the original adjuster and Patel observed damage to the vent, although Patel labeled it as an "A/C unit."  While plaintiff does not appear to have specifically raised the issue of the damage to the ventilation system and its extent at the time of the inspections, the defendant has not shown that the plaintiff was aware at the time the ventilation was discarded that the adjusters had not fully inspected it to their satisfaction.  Pascal's apparently did not become aware of the original inspector's report until late in 2007.  As plaintiff notes, perhaps some of the delay and incomplete inspection can be attributed to the fact that the second adjuster was new to the profession and had limited experience with the items he was inspecting.

Like the defendant in *Menges* who was given full access to the plaintiff's medical records, and had ample opportunity to investigation plaintiff's condition and require an IME before the plaintiff underwent surgery, UNIC had ample opportunity to inspect the damage to

Pascal's, including the ventilation system, in this case. The defendant has not demonstrated that the plaintiff knew or should have known that the opportunities afforded were insufficient and thus knew to retain the ventilation system for purposes of its claim or possible litigation.

As a result of the removal and discarding of the hood system, the plaintiff may indeed have more difficulty in convincing the jury of its claims and meeting its burden in this lawsuit. However, the defendant has not met its burden of showing bad conduct in seeking an adverse inference here. The Court likewise finds that defendant has not shown there are any grounds under the Federal Rules of Evidence for excluding any evidence regarding damage to the hood system or that it needed replacing that plaintiff may be able to produce.

Accordingly,

IT IS ORDERED THAT the motion of defendant to exclude evidence or alternatively to apply an adverse presumption is hereby DENIED.

New Orleans, Louisiana, this 15th day of April, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE